IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KEVIN A. STANFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | CV-06-631-TC |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

## INTRODUCTION

Plaintiff Kevin Stanfield brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Stanfield was born December 1, 1964. Tr. 100.[1] He has a high school education and two years of art school. Tr. 24. Stanfield's work experience includes electronics salesperson, ranger aide, gas station attendant, checker, cook, jointer operator and materials handler. Tr. 60. He continues to work a limited number of hours in an electronics store. Tr. 44. Stanfield alleges onset of disability from 1992 due to a combination of impairments including cervical and lumbar disc disease, left shoulder impingement, urinary incontinence, left hand dysfunction, leg numbness, depression and insomnia. He applied for DIB and SSI on April 17, 2002, and his applications were denied. A hearing was held before and Administrative Law Judge (ALJ) on July 12, 2005. Stanfield satisfies the insured status requirements for a claim under Title II through September 30, 2008, and must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on October 25, 2005, finding Stanfield not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146. Although the ALJ found that Stanfield has the medically severe impairments of lumbar and cervical degenerative disc disease and torn left rotator cuff, he challenges the ALJ's determination that he did not have severe mental impairments.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Stanfield challenges the ALJ's determination of his RFC. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ found Stanfield was not able to perform his past work.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(e), (g), 416.920(e), (g). Here the burden shifts to the Commissioner to show that a significant number of

jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Stanfield challenges the ALJ's determination that he can perform other work in the national economy.

## THE ALJ's FINDINGS

The ALJ determined Stanfield had engaged in substantial gainful activity (SGA) until January 1, 2002 and was therefore not disabled before that date. Tr. 18. He found the medical evidence established Stanfield had a severe impairment of degenerative disc disease in the lumbar and cervical spine and torn left rotator cuff. *Id.* The ALJ determined Stanfield's impairments did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Part 404, subpart P, appendix 1 (Listing of Impairments). *Id.* He found Stanfield retained the RFC to perform work at a sedentary level of exertion with limitations. The limitations include never climbing ropes, ladders or scaffolds; never lifting overhead; only occasionally pushing, pulling or using hand controls with the left arm; only occasionally crouching or crawling; only occasionally climbing ramps and stairs; and avoiding concentrated exposure to hazards such as heights and moving machinery. Tr. 23.

The ALJ elicited testimony from an impartial vocational expert (VE). Tr. 60-62. The ALJ asked the VE whether an individual of Stanfield's age, education, experience, and RFC should perform Stanfield's past relevant work. The VE responded the individual could not perform Stanfield's past relevant work but could perform work as a charge account clerk, repair order clerk, and information clerk. The ALJ determined Stanfield could not perform his past relevant work but could perform work that exists in significant numbers in the economy and was not disabled within the meaning of the Social Security Act. Tr. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## DISCUSSION

Stanfield alleges the ALJ erred by finding he did not have a severe mental impairment. He further alleges the ALJ failed to adequately develop the record. Stanfield contends the ALJ improperly determined his RFC by failing to consider all of his limitations and the combined effect of his impairments. He also argues the ALJ improperly evaluated his credibility.

**I.      Medical Background**

Stanfield had a work related back injury in 1990. Medical examiners noted MRI evidence

of lumbar disc impingement on the SI nerve root. Tr. 276. He continued working and in August, 2001 injured his left shoulder at work. Tr. 115. Stanfield was treated by his primary care physician, Dr. Evans, for left shoulder pain with impingement and was referred to Dr. Karmy. Tr. 278. Karmy diagnosed cervical disc disease and recommended chiropractic treatment. *Id.* Stanfield received treatment from a variety of providers, including examiners for his insurance claim. He was treated by Dr. Haber for low back pain and bilateral leg pain following his work injury. Tr. 310. Dr. Haber diagnosed myofascial pain, sacroiliac joint sprain, lumbar disc extrusion at L5-SI and spondylosis. He gave Stanfield steroid injections, ordered an MRI, and limited him to sedentary work. Tr. 309-312.

Dr. Haber continued treating Stanfield and in October, 2001, gave him steroid injections into his left shoulder, prescribed physical therapy for his rotator cuff problems, and recommended temporary work limitations on lifting and reaching.. Tr. 306. In November, 2001, Dr. Haber noted Stanfield's spinal MRI showed improvement from his previous MRIs. He recommended light work, with a change of positions as needed. Tr. 300-301. Dr. Haber referred Stanfield to an orthopedic surgeon, Dr. Bowman, for treatment of his left shoulder injury. Dr. Bowman assessed impingement syndrome or rotator cuff tear, and then later determined subacromial bursitis with impingement. Tr. 344, 347. He administered steroid injections, and recommended physical therapy. Tr. 344-350.

Stanfield began treatment with Dr. Belza in January, 2002. Dr. Belza diagnosed degenerative disc disease and referred Stanfield to other specialists in order to eliminate the possibility of a diagnosis of multiple sclerosis. Test results were negative for multiple sclerosis. Tr. 328, 332, 338. Stanfield continued to receive treatment for back, neck and shoulder pain through 2002, and Dr. Evans put limits on his lifting to forty pounds with no overhead reaching with his left arm. Tr. 356.

In November, 2002, Dr. Maloney, a DDS examining consultant, developed an RFC for Stanfield of a medium exertion level with limitations on pushing or pulling with the lower extremities. Tr. 405-406.

Stanfield received mental health services from BestCare from October, 2002, through September, 2003, and December 2004 through March, 2005. Tr. 527-544. He was diagnosed by a mental health therapist with Major Depression, Dysthmic Disorder, and Schizotypal Personality Disorder. He was diagnosed with a Global Assessment of Functioning (GAF) of 40, which improved over time to 59.[2] Stanfield received individual and group therapy and was prescribed antidepressants and anti-psychotic medication. *Id.*

Dr. Evans continued to treat Stanfield and ordered a cervical MRI in February, 2003. The MRI indicated a mild left C5-6 focal disc extrusion, mild stenosis in the proximal left foramen, and minimal early right C5-6 uncovertebral osteophyte. Tr. 509. Stanfield received treatment for his neck, shoulder and back pain through 2005 from Drs. Evans and Belza. Dr. Belza limited him at times to sedentary, light, or medium work. Tr. 468-469, 513. Surgery was not recommended for his conditions. Stanfield was treated for urinary incontinence by Drs. Evans and Belza. Tr. 504-

---

[2] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., few friends, unable to keep a job). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)
The American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed. 2000).

7 - OPINION AND ORDER

506, 513, 557. He also received treatment from Cascade Urology Associates, and in July, 2003 was prescribed medications for his incontinence. Tr. 518-525.

Dr. Spray, a state agency consultant, developed an RFC for Stanfield of light exertion level with limitations on pushing or pulling with the upper extremities; never climbing; only occasionally crawling or crouching; no lifting above the shoulder with the left arm; and avoiding workplace hazards. Tr. 496-503. Drs. LeBray and Henry, state agency consultants, determined Stanfield's mental impairments were not severe and resulted in only mild functional limitations. Tr. 426-430, 474-485.

Stanfield had another work-related injury in October, 2004, and Dr. Belza restricted him to light duty. Tr. 513-516. In March, 2005, Dr. Evans noted Stanfield had chronic back and neck pain, depression, some incontinence, and referred him to Dr. Hill. Tr. 546. Stanfield was treated by Dr. Hill in April, 2005. Dr. Hill noted Stanfield's back pain was up and down, his neck problems were exacerbated by his injury at work; he had left-shoulder strain, and pre-existing depression. He recommended a new neck MRI to confirm his diagnosis. Dr. Hill found Stanfield medically stationary with respect to his lumbar strain with no worsening of his left shoulder. He restricted Stanfield to sedentary work. Tr. 559-562.

**II.    Step Two Determination**

Stanfield argues the ALJ erred in not finding he had a severe mental impairment. He contends the ALJ did not consider any mental condition other than depression and improperly rejected the additional diagnoses of Dysthmic Disorder and Schizotypal Personality Disorder made at BestCare. These diagnoses were made by a therapist and a nurse practitioner at BestCare. The record from BestCare indicates no psychological testing was performed and the ALJ noted the

diagnoses appeared to be based solely on Stanfield's reports of symptoms. Tr. 459-462. Evidence to establish an impairment must come from "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Physicians and licensed psychologists are medical sources and therapists and nurse practitioners are "other sources." 20 C.F.R. §§ 404.1513, 416.913. Stanfield's depression was noted by his treating physicians, Drs. Evans and Hill, and nonexamining consultants, Drs. LeBray and Henry. Stanfield's diagnoses of other mental impairments were not made by acceptable medical sources. However, if other sources, such as nurse practitioners, are supervised by a treating physician, they are considered acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). There are no signatures or notes from a physician or psychologist at BestCare. There is no evidence in the record to indicate the therapist or nurse practitioner from BestCare were supervised by a physician or psychologist and the BestCare records alone are insufficient to establish another mental impairment.

Even if the diagnoses from BestCare were from an acceptable medical source, a diagnosis without significant functional limitations does not compel a finding of "severe" impairment. The claimant bears the burden of proving that his impairment is severe. 20 C.F.R. §§ 404.1512, 416.912; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). An impairment is not severe if it does not significantly limit the ability to do basic work activities. *Id* at 460; 20 C.F.R. §§ 404.1521, 416.921. Although Drs. LeBray and Henry found Stanfield suffered from depression, they only noted mild functional limitations. Drs. Evans and Hill noted Stanfield's depression but did not state it caused any work limitations. The record from BestCare indicate Stanfield's condition improved with medications and his mood was better when he was working. Tr. 455, 538-540. In addition, the ALJ noted the low GAF scores in the BestCare record were inconsistent with the clinical notes. Tr. 20.

9 - OPINION AND ORDER

The ALJ found Stanfield had other severe impairments. He did not deny Stanfield's claim at step two but proceeded through step five of the sequential evaluation.

## III.    Record Development

Stanfield contends the ALJ failed to fully develop the record regarding his mental impairments. An ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d at 459-460; *Tonapetyan v. Halter,* 242 F3d 1144, 1150 (9th Cir 2001). The treating physicians and state agency consultants noted Stanfield's depression. None of these physicians or psychologists indicated Stanfield's mental condition interfered with his ability to work. The ALJ noted that despite some limitations, Stanfield's activities of daily living indicate his ability to do many basic types of activities. Stanfield also worked part time jobs through the period in question. On his disability applications, Stanfield described his physical condition, pain, and depression from his pain as the reasons he is unable to work full time. Tr. 129-139, 150-154, 211-214, 219-227. The records from BestCare records are not medical sources. However, even these records note Stanfield's improvement from medications.

Although the medical evidence in the record is largely consistent, Stanfield asserts the ALJ erred by failing to order a consultative psychological evaluation. The ALJ is not required to order a consultative examination unless the evidence is insufficient to resolve a claim. 20 C.F.R. §§ 404.1519a(b), 416. 919a(b); *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). However, as discussed above, the record in this case is not ambiguous and is sufficient to support the ALJ's decision.

## IV. RFC Determination

### A. Combination of Impairments

Stanfield contends the ALJ failed to consider the effect of the combination of all of his impairments, including urinary incontinence. The ALJ discussed the medical evidence and properly evaluated the functional limitations imposed by Stanfield's conditions. He specifically noted Stanfield's treatment for incontinence and improvement with medication. While noting the discomfort of the symptoms of Stanfield's urinary incontinence, the ALJ also found it did not cause significant functional restrictions. Stanfield continued to work part time in electronics sales and repair with this condition. Drs. Evans, Belza, and Hill noted his incontinence symptoms and medication treatment. However, these treating physicians did not state this condition interfered with Stanfield's ability to work. To the contrary, they recommended work restrictions of either light duty or sedentary work. Tr. 513, 546, 568-569.

The ALJ also addressed the mild limitations imposed by Stanfield's nonsevere mental impairments. Stanfield asserts the ALJ should have considered the mental impairments noted by BestCare. However, the ALJ determines an RFC based upon limitations for which there is a record. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See* SSR 96-8p." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### B. Other Limitations

Stanfield asserts that although the ALJ adopted most of Dr. Evans' opinion, he erred by not adopting a restriction on repetitive activities noted in Dr. Evans' clinical notes. A treating physician's opinion is generally afforded the greatest weight in disability cases because the treating

11 - OPINION AND ORDER

physician is "employed to cure and has the best opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(citations omitted). A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ can reject a treating physician's opinion that is not contradicted by another physician only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ can reject a treating physician's opinion that is controverted only if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*, quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1195, citing *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) and *Tonapetyan v. Halter,* 242 F.3d at 1149.

The Commissioner argues the restriction on repetitive activities noted by Dr. Evans was temporary and not a medical opinion of permanent disability. Dr. Evans' clinical notes regarding a restriction on repetitive lifting from July 29, 2002, state

> S: Kevin is here basically because he is concerned about some work issues. He got laid off from the Texaco and has filed for unemployment. Apparently they would like him to go to work doing cutting, laminating and finger-jointing. He feels that this work is too heavy for him and that he can't do it. He currently has a couple of open workman's comp (sic) claims. 1. Regarding his left shoulder, Dr. Haber has been following that and it appears to be either rotator cuff injury or an impingement type of injury. He also has chronic back pain which has been going on for quite some time. He continues to smoke. He is doing well at his Texaco job and found that was an appropriate level of work.
> O: Pleasant male in no acute distress. There is tenderness over the anterior and posterior left shoulder. There is a positive impingement sign. Range of motion is limited in lateral plane but anterior plane is okay. Limb is neurovascularly intact.

> A: 1. Left Shoulder Impingement Syndrome vs. Rotator Cuff Tear.
> P: 1. Will adjust work restriction with no repetitive activities, lifting over 40 pounds and no overhead lifting with the left arm.

Tr. 356. In determining Dr. Evans' restrictions of July, 2002 were temporary, the ALJ noted, "But in August, 2002, Dr. Evans reported that the claimant had normal strength and reflexes (Exhibit 9F:2-3). That report suggests that the claimant was capable of a range of light work. However, his symptoms waxed and waned at times." Tr. 20.

The record supports the finding made by the ALJ that Dr. Evans' restriction was temporary. Dr. Evans does not note this restriction in his clinical notes after July, 2002. Tr. 504-508, 546-551. At a follow up visit in August, 2002, Dr. Evans noted normal strength and reflexes in the upper and lower extremities. He also stated he would arrange for a follow up with the treating specialist, Dr. Belza. Tr. 354. Dr. Belza diagnosed strain and prescribed ibuprofen. Tr. 399. Dr. Belza noted Stanfield's unemployment at follow up visits and listed no work restrictions. Tr. 397-399. In April, 2003, Dr. Belza noted Stanfield should be limited to sedentary to light levels of work. His clinical notes indicate low back pain with no mention of ongoing shoulder problems. Tr. 469. By June, 2003, Dr Belza released Stanfield to a light to medium level of work. Tr. 468. The ALJ's finding that the July, 2002, restriction was temporary is supported by substantial evidence in the record.

Stanfield also argues the ALJ erred in not adopting a restriction on pushing and pulling with the lower extremities noted by Dr. Maloney, a state agency examining consultant. Dr. Maloney found Stanfield could perform work at the medium exertion level, which is a greater exertional level than the one determined by the ALJ. Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir.

13 - OPINION AND ORDER

2001) The ALJ properly found Dr. Maloney's overall opinion unpersuasive and determined the evidence, including that from the treating physicians, indicated a sedentary level of exertion. A sedentary level of exertion is more restrictive than what Dr. Maloney opined. Dr. Maloney's opinion of a limitation on pushing and pulling with the lower extremities was without explanation and checked on a form. The ALJ properly rejected Dr. Maloney's opinions which were controverted by the treating physicians and inconsistent with the record as a whole.

### C. Credibility Determination

Stanfield asserts the ALJ failed to properly evaluate his testimony regarding his limitations and pain. He asserts the ALJ erred by finding his unemployment benefits and part time work undermined his credibility. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Stanfield has medically determinable impairments which could produce his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, including the effectiveness of medications. *Smolen v. Chater*, 80 F.3d at 1284-1285. The ALJ found Stanfield's assertions of disability inconsistent with his medical record. He noted the record indicated Stanfield had impairments which limited him to sedentary work, but were not disabling. The medical record also indicated improvement with proper treatment and

medication. The ALJ further noted Stanfield's treating physicians recommended sedentary or light levels of work, which is inconsistent with disability.

The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id* at 1285. The ALJ noted Stanfield was able to perform many activities of daily living including cooking, shopping, and walking for a mile. Tr. 53, 58. The ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *See, Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). On the other hand, "a disability claimant does not need to be completely incapacitated in order to be deemed eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do have a bearing on his credibility. *Id.* The ALJ noted that Stanfield was able to care for himself and work part time. In fact, Stanfield was injured while at work in 2004, which resulted in a temporary exacerbation of his symptoms. Stanfield testified he worked selling and repairing electronics for about ten hours a week. Although he stated his employer provided accommodations for him, the ALJ correctly noted there is no evidence in the record of these accommodations. The ALJ found Stanfield's work history and activity level indicated an ability to work on a sustained basis. *See, Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen v. Chater*, 80 F.3d at 1284; *See also* SSR 96-7p. The ALJ noted Stanfield lost his job as a gas station attendant and applied for

15 - OPINION AND ORDER

unemployment benefits. The ALJ found Stanfield's application for unemployment benefits claiming an ability to work inconsistent with his social security disability applications which claimed an inability to work. Stanfield argues the Social Security Regulations require applicants for SSI to apply for all benefits to which they are entitled, including unemployment insurance benefits. 20 C.F.R. § 416.210(a). In addition, individuals with disabilities are not required to seek full time employment under Oregon's administrative procedures for employment insurance benefits. Or. Admin. r. 471-030-0036. While the ALJ may have been incorrect in finding Stanfield's application for unemployment benefits reflected on his credibility, that was only one of the reasons given by the ALJ in his credibility assessment. The ALJ gave clear and convincing reasons for rejecting Stanfield's assertions regarding his ability to work. One incorrect reason does not invalidate the entire credibility finding. *See, Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1197. The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Stanfield is not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence.

## ORDER

The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of December, 2006.

Thomas Coffin
United States Magistrate Judge